IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF OHIO
WESTERN DIVISION

| | |
|---|---|
| LUCKE COMMONS OFFICE CONDOMINIUM ASSOCIATION, INC., | : : : : |
| *Plaintiff*, | : Case No. 1:23-cv-296 |
| v. | : Judge Jeffery P. Hopkins : |
| FRANKENMUTH MUTUAL INSURANCE COMPANY, | : : : |
| *Defendant*. | : |

**ORDER**

This matter is before the Court on Plaintiff Lucke Commons Office Condominium Association, Inc.'s ("Association" or "Plaintiff") Motion to Compel Appraisal and Stay Litigation (the "Motion"). Doc. 5. For the reasons stated below, the Motion is **GRANTED**, and the case **SHALL BE STAYED** pending completion of a full appraisal. Defendant Frankenmuth Mutual Insurance Company's ("Frankenmuth" or "Defendant") Motion for Summary Judgment is **DENIED** as premature but **WITHOUT PREJUDICE** as to refiling. Doc. 12.

**I.     BACKGROUND**

This case arises out of an insurance claim dispute for property damage allegedly caused by a hail and windstorm on April 8, 2020 in Cincinnati, Ohio. Doc. 6, PageID 161. The damage from the storm (the "Loss") occurred at Plaintiff's properties generally located at 11841 Mason Montgomery Rd., Cincinnati, Ohio (the "Property"). *Id.* At the time of the Loss, the Property was insured under Plaintiff's insurance policy for commercial property

with Frankenmuth (the "Policy"). *Id*. After the storm, Plaintiff filed an insurance claim with Defendant for compensation for Property damages associated with the Loss and demanded appraisal to determine the amount. *Id*. Plaintiff provided Defendant with photos of the damage and invited Frankenmuth to physically inspect the property. Pl. Ex. 11, Doc. 9-1, PageID 611. Plaintiff further retained Feazel, Inc. ("Feazel") to inspect the Property and provide a cost estimate for repairs. Doc. 6, PageID 165. Feazel estimated the repairs to cost a total $322,782.77. *Id*.

Frankenmuth disputes that the Property was damaged as a result of the April 8, 2020 hail and windstorm and declined to move forward with an appraisal. Doc. 10, PageID 615. After investigating the cause of the Loss, Frankenmuth determined that the Property rooftops were entirely damaged due to improper installation and ordinary wear and tear. *Id*. Moreover, Frankenmuth contends that Plaintiff repeatedly failed to comply with the requirements of the Policy by failing to provide documentation of the Loss and asserts that such disputes regarding coverage under the Policy are not subject to appraisal. *Id*. at PageID 615, 617; *see also* Pl. Ex. 10, Doc. 9-1, PageID 607.

## II. LAW & ANALYSIS

"Ohio law mandates that insurance policy coverage disputes are legal questions for the Court." *Prakash v. Allstate Ins. Co.*, No. 5:20-cv-00524, 2021 WL 37698, at *2 (N.D. Ohio Jan. 5, 2021) (citing *McPheeters v. United Services Automobile Association*, No. 1:20-cv-414, 2020 WL 4901637, at *2 (S.D. Ohio Aug. 20, 2020)). But "[s]eparating coverage issues from loss issues" is most certainly "not a simple task." *Prakash*, 2021 WL 37698, at *3. This is what demonstrates the utility of an appraisal.

The purpose of an appraisal "is to provide a plain, speedy, inexpensive and just determination of the extent of the loss[.]" *Saba v. Homeland Ins. Co.*, 159 Ohio St. 237, 240 (1953) (quoting 45 C.J.S. Insurance § 1110). "The appraisal provisions are an integral part of the body of each [insurance] policy[,]" *Saba* at 242, and are enforceable in Ohio as "any other bargained-for contractual right." *Stonebridge at Golf Vill. Squares Condo. Ass'n v. Phoenix Ins. Co.*, No. 2:21-cv-4950, 2022 WL 7178548, at *2 (S.D. Ohio Sept. 22, 2022).

Here, the governing appraisal clause reads, in part:

> **Appraisal**. If we and you disagree on the value of the property or the *amount of loss*, either may make written demand for an appraisal of the loss. The two appraisers will select an umpire. If they cannot agree, either may request that selection be made by a judge of the court having jurisdiction. The appraisers will state separately the value of the property and amount of loss. If they fail to agree, they will submit their differences to the umpire. A decision agreed to by any two will be binding.

Doc. 6, PageID 166 (emphasis added).

The issues to the instant dispute are three-fold: whether the Loss is covered, whether the storm caused the Loss, and how much Defendant would be liable to Plaintiff to cover the Loss. Plaintiff maintains that appraisal is appropriate to resolve all factual issues related to the amount of loss and causation: specifically, how much damage the April 8, 2020 storm caused, what repairs are necessary to restore the Property, and how much those repairs will cost. Doc. 6, PageID 163. Defendant counters that fundamental legal questions as to its liability pursuant to the Policy—*i.e.*, whether the Loss is covered—must be resolved prior to any appraisal process or determination of the causation or amount of loss. Doc. 10, PageID 617. But the question as to what and how much damage the storm caused is an acutely fact-intensive inquiry, not a legal one. And it is a question that, in this Court's view, "is best left

for a full, first-hand appraisal, rather than a second-hand judicial review." *Stonebridge*, 2022 WL 7178548, at *3.

Indeed, Courts have held that "the phrase 'amount of loss' requires … [a] causation determination[]." *Westview Vill. v. State Farm Fire & Cas. Co.*, No. 1:22-cv-0549, 2022 WL 3584263, at *3–4 (N.D. Ohio Aug. 22, 2022) (finding that an "[a]ppraisal [was] the proper mechanism to resolve" a dispute over the "extent" of storm damage suffered by the claimant). Thus, in order to determine whether Frankenmuth is liable to Association under the Policy, "[an] appraiser[] must decide what caused the damage" for which Association seeks coverage. *Id.* (citing *Axis Surplus Ins. Co. v. Condor Corp.*, 19 F.4th 1062, 1064 (8th Cir. 2021)).

Here, there is "clearly a disagreement as to what damage … [the] storm caused." *Stonebridge*, 2022 WL 7178548, at *3. Defendant argues that the "rooftops were not damaged by hail" but by "improper installation and ordinary wear and tear." Doc. 10, PageID 615. Conversely, Plaintiff's position is that the storm caused damages in the amount of $332,782.24. Doc. 11, PageID 630. Plaintiff acknowledges that "damage caused by wear and tear, product defect, deterioration, and construction defect [is] not covered." *Id.* at PageID 631. Thus, to the extent that Plaintiff concedes that certain damages are not indemnifiable pursuant to the Policy, "there is no coverage dispute" per se. *Id.*

Rather, essential to this matter is the question of causation: did the storm on April 8, 2020 cause the damages for which Plaintiff now seeks coverage pursuant to the Policy? Defendant itself admits that the "parties dispute [the] threshold question[] of … causation." Doc. 10, PageID 616. Courts in a variety of jurisdictions—including Ohio—"have interpreted the process [of appraisal] to 'require[]' (or simply permit) a causation analysis." *Stonebridge*, 2022 WL 7178548, at *2 (citing *Westview Vill.*, 2022 WL 3584263, at *3–4). This is especially

4

important where, as here, the "appraisal provision is otherwise silent as to how an appraiser should measure the 'extent' of a 'loss….'" *Id*. Thus, in order to determine whether the Loss is *covered*, the Court finds that an appraisal is first warranted in order to establish what *caused* the Loss.

### III. CONCLUSION

Based on the factual and legal predicate set forth above, the Court **ORDERS** the following:

1. Plaintiff's Motion to Compel Appraisal (Doc. 5) is **GRANTED**.

2. The Parties are **ORDERED** to proceed with the appraisal process as set forth in the Policy with all due haste. The appraisals should separately calculate and identify disputed costs so the Court can either include or exclude them once it has determined whether the Policy provides coverage for them.

3. This civil action is **STAYED** pending resolution of the appraisal. The parties **SHALL FILE** a joint status report within **twenty-one (21) days** of the completion of the appraisal and inform the Court as to whether any unresolved dispute remains in this case.

4. Defendant's Motion for Summary Judgment (Doc. 12) is **DENIED WITHOUT PREJUDICE** as to refiling. Pursuant to § 6(a) of this Court's Standing Order Governing Civil Cases, "[m]otions for summary judgment shall not be filed before the close of discovery without leave of Court." As the discovery deadlines have not yet elapsed, and because Defendant had not previously sought leave of Court, its Motion for Summary Judgment is premature. Doc. 12. This disposition is *not* on the merits,

however, and Defendant may re-file its Motion for Summary Judgment after the close of discovery or after said motion has been filed (and been granted) upon leave of Court.

**IT IS SO ORDERED.**

September 30, 2025

Jeffery P. Hopkins
United States District Judge